Argued and submitted August 6, affirmed December 10, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALLISON NICOLE OHM,
*Defendant-Appellant.*

Washington County Circuit Court
D052398T; A130976

197 P3d 1136

────────────

Ben Eder argued the cause and filed the briefs for appellant.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

SCHUMAN, P. J.

### SCHUMAN, P. J.

■ Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010, assigning error to the trial court's denial of her motion to suppress evidence that she refused to submit to a breath test. She argues that evidence of her refusal was inadmissible for two reasons: first, because the refusal occurred without the advice of counsel and was therefore fatally tainted; and second, because she had a constitutional right to refuse the test and the state cannot use the invocation of a constitutional right as evidence of guilt. We rejected the second argument in *State v. Gefre*, 137 Or App 77, 83-84, 903 P2d 386 (1995), *rev den*, 323 Or 483 (1996), and again in *State v. Greenough*, 216 Or App 426, 430-31, 173 P3d 1227 (2007), *rev den*, 344 Or 280 (2008), and we here reject it yet again without further discussion. We agree with defendant that the evidence of her refusal resulted from an uncounselled decision, but we conclude that the error was harmless. We therefore affirm.

 The relevant facts are not in dispute. Officer Schneider arrested defendant for DUII. At the police station, he provided her with a telephone, telephone books, and her own cell phone. He then asked her if she would take a breath test. According to his testimony,

> "[a]t first she said she didn't know what to do, that she wanted to ask someone. And I asked her if she wanted to ask someone what to do, and she said yes. And I told her again that she was free to use those phones and phone books to call anybody she wanted to if she wanted to ask for advice; at which point she told me she did not want to call anyone."

What happened next is captured in the following colloquy between defense counsel and the officer:

> "[COUNSEL]: Did you go then and say, I'll—if you want to make a call, I'll leave the room so you can talk in private?
>
> "[OFFICER SCHNEIDER]: No, I did not.
>
> "[COUNSEL]: Okay. Did you offer her privacy?
>
> "[OFFICER SCHNEIDER]: No."

Schneider further testified that, after the 15-minute observation period that is required before conducting a breath test, "I asked her again what she wanted to do, if she wanted to take the breath test, and at that time she told me, and I quote, 'I don't want to take the test,'" a statement that Schneider recorded as a refusal. At a pretrial hearing, defendant submitted a motion to suppress evidence of her refusal to submit to a breath test. The court denied that motion, and defendant was subsequently convicted by a jury.

On appeal, defendant renews her argument that she was denied her right to counsel under Article I, section 11, of the Oregon Constitution[1] because she was not afforded an opportunity to consult an attorney in private before deciding whether to take the breath test and that evidence of her refusal should therefore have been suppressed.[2] We agree with defendant that she was not afforded her right to counsel. In *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988), the Supreme Court held that "under the right to counsel clause in Article I, section 11, an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." The court expanded on its description of that right in *State v. Durbin*, 335 Or 183, 193-94, 63 P3d 576 (2003), holding "that a driver arrested for DUII has, upon invoking the right to counsel, the right to a reasonable opportunity to consult *privately* with counsel before deciding whether to submit to a breath test." (Emphasis added.) We applied that holding in *State v. Matviyenko*, 212 Or App 125, 127-30, 157 P3d 268 (2007), concluding that, where the defendant stated that he wanted to call an attorney and the officer provided him with a telephone and telephone books but did not leave the room,

---

[1] Article I, section 11, provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *."

[2] Defendant also asserts that the Fourteenth Amendment to the United States Constitution protects her right to counsel in the present case. However, she offers no argument as to why the Fourteenth Amendment protects her right to a private consultation with counsel. Accordingly, we decline to address defendant's federal constitutional claim. *See State v. Thompson*, 328 Or 248, 254 n 3, 971 P2d 879, *cert den*, 527 US 1042 (1999) (refusing to address constitutional claims in the absence of any "thorough and focused constitutional analysis").

the officer's presence in the room interfered with the defendant's right to counsel. We stated,

> "[A]n officer may be justified in remaining in the room until contact with an attorney is made in order to ensure that the suspect actually calls an attorney rather than using the telephone for some inappropriate purpose. However, when a DUII arrestee has asked to call an attorney, if an officer intends to remain seated in the room until the call is made, we think that the onus is properly on the officer to inform the arrestee—before the call is made—that, once he or she contacts an attorney, privacy will be afforded."

*Id.* at 130.

The right delineated by these cases is the right to have an opportunity to consult with *counsel.* Defendant asserts that a driver arrested for DUII has the right to consult privately not just with counsel, but with anyone. She relies on language from *State v. Newton*, 291 Or 788, 636 P2d 393 (1981), and *Moore v. Motor Vehicles Division*, 293 Or 715, 652 P2d 794 (1982). In *Newton*, 291 Or at 807, the court referred to "[f]reedom of an arrested person to communicate" and "liberty to communicate as he chose"; in *Moore*, 293 Or at 719, the court described *Newton* as "holding that an arrested person is entitled to communicate with counsel or others and that the police must reasonably accommodate a request to do so unless it would interfere with their duties." Neither of these cases involves a defendant's right to counsel, under either the federal or Oregon constitution. Only three justices relied on a constitutional source in *Newton*; one justice concurred on statutory grounds, *Newton*, 291 Or at 813 (Tongue, J., specially concurring), and three dissented, *id.* at 815, 818 (Lent, Linde, and Peterson, JJ., dissenting). The plurality relied not on the right to counsel, but on the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 806-07. In *Moore*, the court reached no constitutional question; it did, however, state hypothetically that an unjustified refusal to allow a person to speak with a lawyer deprives that person of "liberty," which we take as a reference, as in the *Newton* plurality opinion, to the Fourteenth Amendment. Thus, to the extent that *Newton* and *Moore* refer to a right to consult with a nonlawyer, that right derives from the Due Process Clause.

■ ■ *Durbin* and *Matviyenko*, on the other hand—the cases holding that the right to consult with counsel implies the right to do so *in private*—rely on Article I, section 11, of the Oregon Constitution, and the implied privacy right is inextricably linked to the fact that the consultation is with an attorney; a driver arrested for DUII has the right to consult privately with counsel because "confidentiality is 'inherent' in the right to counsel." *Durbin*, 335 Or at 190. That is so because "the purpose of the *lawyer-client privilege* cannot be fulfilled unless the communications between a client and a *lawyer* are confidential." *Id.* (emphasis added). Thus, defendant correctly asserts that, under *Newton* and *Moore*, a driver arrested for DUII "is entitled to communicate with counsel or others and * * * the police must reasonably accommodate a request to do so unless it would interfere with their duties." *Moore*, 293 Or at 719. Police must reasonably accommodate such a request because "[c]ommunication may be the means to security release, advice, reassurance of one's family or associates, or professional assistance." *Newton*, 291 Or at 807. Insofar as the communication is not with an attorney, it does not necessarily include an inherent right to confidentiality. Thus, a driver arrested for DUII has the right, upon request, to consult with a lawyer or a nonlawyer, but to consult *privately* only with *counsel. Accord State v. Veatch*, 223 Or App 444, 196 P3d 45 (2008) (no right to private call to nonlawyer even if purpose of call is to locate lawyer).

■ ■ The question in this case, therefore, is whether defendant invoked her right to counsel when she told the police officer that she "wanted to ask someone" for advice before deciding whether to take the breath test. If a suspect makes an equivocal invocation of the right to counsel under Article I, section 12,[3] police are required to ask follow-up questions to determine what the suspect meant before proceeding with interrogation. *State v. Charboneau*, 323 Or 38, 54, 913 P2d 308 (1996). Similarly, we conclude that, if a driver arrested for DUII makes an equivocal invocation of the right to counsel under Article I, section 11, police must ask

---

[3] Article I, section 12, provides, in part:

"No person shall * * * be compelled in any criminal prosecution to testify against himself."

follow-up questions to determine whether they must inform the driver that, once he or she contacts an attorney, privacy will be afforded. In determining whether a defendant's statement is an equivocal invocation, we view the statement in light of the totality of the circumstances at and preceding the time that it was made "to ascertain whether a reasonable officer in the circumstances would have understood that defendant was invoking [her] rights." *State v. Holcomb*, 213 Or App 168, 176, 159 P3d 1271, *rev den*, 343 Or 224 (2007).

We conclude that, under the circumstances here, a reasonable police officer would regard defendant's statement that she wanted advice from "someone" as an equivocal invocation of her right to counsel. The conversation between defendant and Schneider occurred while defendant was confined in a police station, having been arrested for DUII, and confronting a decision involving legal issues and having serious punitive consequences. A reasonable police officer would certainly have understood defendant's request to "ask someone" for "advice" to be (at least possibly) a request to speak to an attorney. That being the case, the officer had the obligation, first, to ask follow-up questions in order to determine whether defendant had invoked her right to counsel; and second, if so, to inform her that, if she wanted to speak with an attorney, she could do so in private. Because that did not occur, defendant was not afforded her right to counsel under Article I, section 11.

That conclusion, however, does not end our inquiry. Defendant does not argue that her conviction must be reversed because she was denied her right to consult privately with an attorney—that is, that denial of the right to counsel *per se* requires reversal—and we do not address that question. Rather, defendant's assignment of error is that the trial court should not have allowed the state to introduce evidence of her refusal to take the breath test. Put another way, defendant argues only that, because her refusal to take the breath test resulted from an unlawful failure to afford her the right to consult privately with an attorney, the refusal should have been suppressed. To prevail on that argument, defendant must demonstrate not only that the evidence was tainted by a violation of the right to counsel, but that admitting it was harmful. Or Const, Art VII (Amended), § 3 (judgment must be affirmed notwithstanding error if error did not

affect judgment); OEC 103(1) (evidentiary error not presumed to be prejudicial). Thus, we must affirm the conviction if "there [is] little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

Here, the state presented a compelling case against defendant. The testimony established that defendant had spent the evening at two taverns and had consumed "five or six" drinks; that, after the second tavern closed at around 2:00 a.m., she got in her car and drove "erratically" on I-5, "swerving back and forth," frequently crossing from one lane to another and, at one point, driving into the median; that, when she was finally detained at her home, she had slurred speech, bloodshot and glassy eyes, and the odor of alcohol on her breath; that she attempted to exculpate herself by telling the arresting officer that she had not been driving, but was dropped off by a friend (an assertion that cannot be squared with the evidence); that she failed several field sobriety tests (although not all of them); and that she showed all six indicators of intoxication on the horizontal gaze nystagmus test. Her refusal to take the breath test was relevant only to show "consciousness of guilt." *See Gefre*, 137 Or App at 81. In that respect, it was entirely cumulative to the evidence that she had denied driving. The error in admitting the evidence of her refusal to take the breath test, we conclude, was harmless.

Affirmed.