Argued and submitted October 31, 2006, reversed and remanded April 11, 2007

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## VITALIY V. MATVIYENKO,
*Defendant-Appellant.*

Multnomah County Circuit Court
040241831; A128810

157 P3d 268

Kristin Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Defendant was convicted of driving under the influence of intoxicants (DUII). ORS 813.010. On appeal, he challenges the denial of his motion to suppress evidence of his Intoxilyzer test results on the ground that he was denied the opportunity to consult with counsel before deciding whether to consent to taking the test. We reverse.

We take the following facts from the record of the suppression hearing. Trooper Axelson arrested defendant for DUII. At the time of the arrest, defendant stated that he wanted to call an attorney, and Axelson told him that he could call an attorney from the patrol office. At the patrol office, Axelson took defendant to the Intoxilyzer room, a small room in which there was a desk with a telephone and several phone books. Defendant asked to call his wife, and Axelson told him that he could "make any phone calls at that time." He did not specifically tell defendant that he could call an attorney, but he did not express any limits as to who defendant could call or the time frame in which he could make calls. Axelson remained seated at the desk next to defendant while defendant called his wife. After defendant spoke with his wife, he made no further phone calls and gave no other indication that he still wanted to call an attorney. He then took the Intoxilyzer test.

At the suppression hearing, Axelson testified regarding the facts described above. On cross-examination, defense counsel asked Axelson whether he had stepped out of the room to allow defendant to make his calls in private. Axelson responded,

> "No. We won't do that for a couple of reasons. And one is that the equipment inside that room is * * * right next to that chair and we can't allow someone to have access to that and cause any damage. So I'm in the room with him while he's making those phone calls."

Counsel then asked, "So had he called an attorney and wanted to talk in private, would you have sat in the room and listened to the conversation?" Axelson replied, "No. I probably would have moved him to a different location if he had made a specific request to have a private conversation."

Counsel did not ask, and Axelson did not state, what he would have done had defendant called an attorney without asking for privacy. Counsel asked whether Axelson had told defendant that he could have a private room where he could speak with an attorney. Axelson stated that he had not because defendant did not indicate at that point that he wanted to contact an attorney.

The trial court denied defendant's motion to suppress. At trial, Axelson testified that defendant's blood alcohol level as determined by the Intoxilyzer was .18 percent. A jury convicted defendant of DUII. This appeal followed.

■ Defendant assigns error to the trial court's denial of his motion to suppress. He contends that, by remaining in the room, Axelson deprived him of the right to consult privately with an attorney. In defendant's view, a police officer's presence within earshot, with no indication that the officer intends to leave in the event that an arrestee contacts an attorney, negates what would otherwise be a reasonable opportunity to seek legal advice. Defendant contends that the lack of privacy deterred him from calling an attorney.

The state responds that Axelson gave defendant a reasonable opportunity to call an attorney and that defendant simply did not take advantage of it. In the state's view, in light of the "practical reality" of the situation, it was reasonable for Axelson to remain in the room with defendant for two reasons: first, because Axelson had to ensure the safety of the Intoxilyzer machine, and second, because the officer was "entitled to remain present until telephone contact was made with an attorney to make certain that defendant in fact called an attorney and not his neighborhood tavern or a 1-900 adult chat line." The state also asserts that defendant waived the previously asserted right to counsel by not calling an attorney when Axelson told him he could.

■ ■ A suspect arrested for DUII has the right, upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test. *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988). If a suspect asks to speak with counsel at the time of the arrest, the police must honor the request even if the suspect does not renew it upon arrival at the police station. *State v. Ashley*, 137 Or App

561, 907 P2d 1120 (1995). Furthermore, a suspect who invokes the right to counsel need not specifically request to consult *privately* with an attorney; "the request for counsel, by itself, indicates that the arrested driver wants the essential elements that inhere in that right, including the opportunity for confidential communication." *State v. Durbin,* 335 Or 183, 191, 63 P3d 576 (2003). In *Durbin,* the defendant was arrested for DUII and taken to the county jail for a breath test. At the jail, while the arresting officer was questioning him in preparation for administering the test, he asked to speak with an attorney. The officer allowed him to use the telephone, but he remained in the room while the defendant conferred with the attorney. The defendant then agreed to take the breath test, and he was later convicted of DUII. The Supreme Court reversed the conviction, holding that a "driver arrested for DUII who asks to speak to a lawyer need not make a further, independent request for confidentiality." *Id.*

Nevertheless, the right to consult with an attorney is not unlimited. For example, in light of the evanescent nature of blood-alcohol evidence, the police may limit the duration of the opportunity to contact an attorney. *Spencer,* 305 Or at 74. Also, the degree of privacy allowed may be limited in order to conduct an accurate breath test, or it may be limited because of security considerations. *State v. Penrod,* 133 Or App 454, 458-59, 892 P2d 729 (1995). However, the state bears the burden of justifying any restriction on private consultation. *Id.* at 459 ("[W]hen a defendant contends that his or her right to a confidential conversation with counsel has been unreasonably restricted, it is incumbent upon the state to show that the restriction was justified * * *.").

We conclude that Axelson did not fully honor defendant's request to consult with counsel—specifically, the implicit request for confidential communication. Axelson took defendant to a room in which he could not make a private telephone call because the Intoxilyzer machine was in that room. That is not, by any measure, an opportunity to communicate privately with counsel.

Furthermore, we reject the state's argument that the "practical reality" of the situation justified Axelson in

remaining in the room with defendant. First, the "reality" that Axelson could not leave defendant alone was created by the fact that Axelson took him to the room with the Intoxilyzer machine in the first place—despite knowing that defendant wanted to call an attorney. Limits on a suspect's rights cannot be justified by circumstances created by the police. *Cf. State v. Hite*, 198 Or App 1, 10, 107 P3d 677 (2005) ("Police officers cannot rely on exigencies of their own creation to justify a warrantless search."). Axelson's testimony indicates that another telephone in a different room could have been made available, and the state offers no reason that Axelson could not have taken defendant to that room to begin with.

Second, we acknowledge that an officer may be justified in remaining in the room until contact with an attorney is made in order to ensure that the suspect actually calls an attorney rather than using the telephone for some inappropriate purpose. However, when a DUII arrestee has asked to call an attorney, if an officer intends to remain seated in the room until the call is made, we think that the onus is properly on the officer to inform the arrestee—before the call is made—that, once he or she contacts an attorney, privacy will be afforded. That is because a person in circumstances such as these could reasonably conclude that, if an officer says that the person may make his or her phone calls and then sits down at the desk, the officer is planning to remain for the duration of the calls. Such a person would rightly assume that any statements made in the officer's presence would not be confidential, *Durbin*, 335 Or at 192, and thus be inclined not to make the call. *Cf. State v. Goss*, 161 Or App 243, 250, 984 P2d 938 (1999) (it is reasonable to assume that an officer's presence in the room during telephone consultation with an attorney chills the defendant's ability to communicate); *State v. Riddle*, 149 Or App 141, 148, 941 P2d 1079, *rev den*, 326 Or 68 (1997) (noting the "chilling effect" of recording a telephone conversation even though the defendant was told that no one would listen to the recording). Moreover, to conclude otherwise would require the suspect to reassert the right to private consultation, a result that *Durbin* precludes.

Finally, we reject the state's assertion that defendant waived the right to counsel by failing to attempt to call an attorney. Although a waiver need not be express, conduct

constituting a waiver must be clear and unambiguous. *State v. Eidson*, 73 Or App 719, 729, 700 P2d 285, *rev den*, 299 Or 583 (1985). Defendant's decision to proceed with the breath test did not unambiguously demonstrate that he had changed his mind about wanting to call an attorney. It is at least equally plausible to infer that he did not call an attorney because he believed that Axelson was not going to allow him to do so in private. Because the import of defendant's decision to proceed without calling an attorney is ambiguous, we may not infer that he waived his previously asserted right to counsel.

Because Axelson did not give defendant a reasonable opportunity to consult privately with an attorney, the results of his breath test are inadmissible as evidence. *State v. Brazil-Kay*, 137 Or App 589, 593, 907 P2d 1116 (1995), *rev den*, 323 Or 484 (1996) (deprivation of a reasonable opportunity to consult with counsel warrants suppression of the breath test results). It follows that the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.