Argued and submitted July 31, 2013, reversed and remanded December 24, 2014, petition for review allowed April 23, 2015 (357 Or 164)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WALTER PERRY LILE,
*Defendant-Appellant.*

Curry County Circuit Court
11CR0023; A148884

341 P3d 162

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Paul L. Smith, Attorney-in-Charge, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Douglas F. Zier, Senior Assistant Attorney General.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Wollheim, Senior Judge.*

_____
* Haselton, C. J., *vice* Schuman, S. J.

DUNCAN, P. J.

## DUNCAN, P. J.

In this criminal case, defendant appeals the trial court's judgment convicting him of driving under the influence of intoxicants (DUII), ORS 813.010, and reckless driving, ORS 811.140. He assigns error to the court's denial of his motion to suppress evidence of the results of an Intoxilyzer test (breath test), arguing that the evidence is inadmissible because it was obtained in violation of his right, under Article I, section 11, of the Oregon Constitution, to a reasonable opportunity to obtain legal advice before deciding whether to submit to the test.[1] For the reasons explained below, we agree. Accordingly, we reverse and remand.

The relevant facts are undisputed, and we state them in accordance with the trial court's express and implied findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993) (when we review a trial court's denial of a defendant's motion to suppress, we are bound by the trial court's fact findings if there is constitutionally sufficient evidence to support them). Corporal Wood of the Gold Beach Police Department arrested defendant for DUII and reckless driving and transported him to the Curry County Jail. At the jail, Wood advised defendant of his rights under the Implied Consent Law, *see* ORS 813.130, and began observing defendant as required before administration of a breath test, *see* OAR 257-030-0070(2)(a). Wood asked defendant if he would take a breath test, and defendant stated that he wanted to call his attorney, Gardner. Wood provided defendant a list of attorneys and their phone numbers. Defendant had trouble reading the list and asked Wood to read him Gardner's telephone number. A jail staff member who happened to be passing by informed defendant that Gardner was in court. Nevertheless, defendant proceeded to call Gardner's office.

Defendant did not reach Gardner directly; however, he spoke with Gardner's receptionist who stated that Gardner was in court. Defendant told the receptionist that

---

[1] Article I, section 11, of the Oregon Constitution provides, in pertinent part, "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *." As discussed below, under that clause, a driver arrested for DUII has "the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988).

he had been arrested for DUII and did not know whether to take the breath test. During defendant's conversation with the receptionist, Wood remained within earshot of defendant; he stood at a desk approximately five to 10 feet away from defendant.

When the observation period ended, defendant submitted to a breath test, during which he provided two breath samples. Each sample indicated that defendant's blood alcohol content was above the legal limit of 0.08.

The state charged defendant with DUII and reckless driving, and defendant moved to suppress the breath test results, arguing, *inter alia*, that Wood had violated his right to counsel under Article I, section 11, by remaining within earshot during his conversation with Gardner's receptionist. The trial court denied the motion, reasoning that Wood had not violated defendant's right to counsel because he had given defendant the opportunity to call Gardner and any other attorney that he might have wanted to call.

After the trial court denied defendant's motion, the state tried its case to a jury, which found defendant guilty of the charged crimes of DUII and reckless driving. The court entered a judgment of conviction, and this appeal followed.

On appeal, defendant renews his argument that Wood violated Article I, section 11, by remaining within earshot while he spoke with his attorney's receptionist. Defendant contends that he had the right to speak privately with the receptionist because the receptionist was his attorney's representative and could engage in confidential communications on his attorney's behalf. In response, the state argues that defendant did not have the right to speak privately with the receptionist because the right to speak privately with an attorney before deciding whether to submit to a breath test does not include the right to speak privately with the attorney's representative.[2]

---

[2] In addition to arguing that Article I, section 11, includes the right to communicate confidentially with an attorney's representative, defendant makes an alternative argument based on *State v. Matviyenko*, 212 Or App 125, 157 P3d 268 (2007). In *Matviyenko*, the defendant was arrested for DUII and asked to call his wife and attorney. An officer took the defendant to a small room to make the calls and stayed in the room while the defendant spoke to his wife. After the defendant spoke to his wife, he did not make any other calls or give any indication that he

Under Article I, section 11, a driver arrested for DUII has the right, upon request, to a reasonable opportunity to consult with counsel before deciding whether to submit to a breath test. *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988). When that right is violated, the remedy is to suppress the results of (or refusal to take) the breath test. *Id.* at 76. The state has the burden of proving that a DUII arrestee was afforded a reasonable opportunity to consult with counsel. *State v. Carlson*, 225 Or App 9, 14, 199 P3d 885 (2008).

The right to a reasonable opportunity to consult with counsel before deciding whether to submit to a breath test includes the right to a private consultation. *State v. Durbin*, 335 Or 183, 191, 63 P3d 576 (2003). An arrestee who requests the opportunity to consult with counsel is not required to separately request the opportunity to consult in private. *Id.* That is because the right to a private consultation is inherent in the right to counsel; it is necessary for a full and frank consultation. *Id.* at 190. If an officer is standing within earshot while an arrested driver speaks with an attorney about whether to submit to a breath test, the officer's presence may deter the driver from providing information to the attorney, such as whether he or she consumed any intoxicants, and if so, when and in what amount.

---

still wanted to call an attorney. He then submitted to a breath test. We held that the test results were inadmissible because the officer "did not fully honor [the] defendant's request to consult with counsel—specifically, the implicit request for confidential communication." *Id.* at 129. We explained that, if an officer intends to remain within earshot of an arrestee to ensure that the arrestee calls an attorney,

"the onus is properly on the officer to inform the arrestee—before the call is made—that, once he or she contacts an attorney, privacy will be afforded. That is because a person in circumstances such as these could reasonably conclude that, if an officer says that the person may make his or her phone calls and then sits down at the desk, the officer is planning to remain for the duration of the calls. Such a person would rightly assume that any statements made in the officer's presence would not be confidential *** and thus be inclined not to make the call. *** Moreover, to conclude otherwise would require the suspect to reassert the right to private consultation, a result that [*State v. Durbin*, 335 Or 183, 191, 63 P3d 576 (2003)] precludes."

*Id.* at 130; *see also State v. Sawyer*, 221 Or App 350, 190 P3d 409 (2008) (following *Matviyenko*). Defendant argues that, like the officer in *Matviyenko*, Wood violated Article I, section 11, by remaining within earshot during the time period in which defendant was allowed to call an attorney and failing to advise defendant that he would be afforded privacy once he reached an attorney. Because we agree with defendant's primary argument, we do not reach his alternative argument.

Under Oregon law, if an officer is within earshot while an arrested driver speaks with an attorney about whether to take a breath test, the officer's presence is presumed to have had a chilling effect on the driver's exercise of the right to counsel. *Durbin*, 335 Or at 192 (where an officer remained within earshot of the defendant while the defendant spoke with an attorney about whether to take a breath test, the officer's presence was presumed to have affected the conversation; the defendant was not required to show that "he felt 'chilled' by the officer's presence or that he would have made a different decision about taking the test had the officer not been present"); *see Spencer*, 305 Or at 75-76 (where the defendant was denied the opportunity to call an attorney, the defendant was not required to show that, if he had been allowed to call an attorney, he would have obtained and followed legal advice to refuse the test). A court will not speculate as to what a driver would have said to an attorney, what advice the attorney would have given, or what decision a driver would have made in response to that advice. *Durbin*, 335 Or at 192; *Spencer*, 305 Or at 76.

Accordingly, if an officer remains within earshot of an arrested driver while the driver is speaking to an attorney about whether to submit to a breath test and the driver later submits to a breath test, evidence of the test results is inadmissible. On this point, *Durbin* is illustrative. In *Durbin*, the defendant was arrested for DUII and transported to a jail, where an officer began the observation period for a breath test. The defendant stated that he wanted to talk to an attorney; the officer provided the defendant a list of phone numbers; and the defendant reached an attorney who was willing to consult with him by phone. The officer remained within earshot while the defendant conferred with the attorney. After the call, the defendant submitted to a breath test. On review, the Supreme Court held that the officer had violated the defendant's right to counsel under Article I, section 11, by remaining within earshot of the defendant while the defendant spoke with the attorney and, as a result of the violation, the defendant's breath test results were inadmissible. *Durbin*, 335 Or at 194; *see also State v. Goss*, 161 Or App 243, 250, 984 P2d 938 (1999) (unjustified restriction on driver's consultation with counsel

required suppression of driver's breath test refusal); *State v. Riddle*, 149 Or App 141, 148, 941 P2d 1079 (1997) (recording of conversation between driver and attorney required suppression of breath test results, regardless of whether anyone ever listened to the recording); *State v. Penrod*, 133 Or App 454, 460, 892 P2d 729 (1995) (where state failed to show that restrictions on driver's right to consult privately with counsel were necessary, driver's refusal to submit to breath test was inadmissible).

This case is akin to *Durbin*. The only difference is that when the officer stood by as defendant was seeking legal advice about whether to submit to a breath test, defendant was not speaking with his attorney; instead, he was speaking with his attorney's receptionist. That difference does not lead to a different result. An attorney may not always be available to speak directly with a client. As a result, a receptionist can, and often does, serve as a conduit of confidential communications between a client and the attorney. For example, an attorney may be in a meeting and have to rely on a receptionist or other staff member to relay information back and forth when a client calls. Or an attorney may be in court, but available to staff by mobile phone or e-mail.

As the law recognizes, confidential communications between a client and an attorney can be direct or indirect. *See* OEC 503(2)(a) (the attorney-client privilege protects "confidential communications" between "the client or the client's representative and the client's lawyer or a representative of the lawyer"); OEC 503(1)(e) ("'[r]epresentative of the lawyer' means one employed to assist the lawyer in the rendition of professional legal services"). When a client is speaking to an attorney's representative to relay information to the attorney for the purposes of obtaining legal advice, the client is communicating with the attorney indirectly and those indirect communications are entitled to the same privacy as direct communications to the attorney. Thus, the right to counsel under Article I, section 11, includes the right to privacy when communicating with an attorney, through the attorney's representative.

The state contends that the officer did not interfere with defendant's right to counsel in this case because the

receptionist could not give legal advice. The state's argument misses the point; the receptionist was the means through which defendant could confidentially communicate with, and obtain legal advice from, his attorney. The officer's presence could have had a chilling effect on defendant's communications; it could have limited the information that defendant chose to relay to his attorney.

The state also contends that this case is similar to *State v. Tyon*, 226 Or App 428, 204 P3d 106 (2009). We disagree. In *Tyon*, an officer remained within earshot of the defendant, who tried to reach a particular attorney at the attorney's office and home, but was unable to get through to anyone within the 45-minute period that the officer allowed, and we concluded that it was clear from the record that the officer's presence had no chilling effect on the defendant's exercise of his right to counsel. 226 Or App at 440. We explained,

> "We do not have to speculate as to the effect of [the officer's] *** presence within earshot of defendant because we know that it did not have any effect—*defendant never stopped trying to reach his attorney during the attorney consultation period.*"

*Id.* (emphasis added); *see also State v. Robinson*, 244 Or App 368, 377-78, 260 P3d 671 (2011), *rev den*, 352 Or 33 (2012) (same). This case is not like *Tyon*; it is not one in which we can say, without speculating, that the officer's presence had no effect on the defendant's exercise of his right to counsel. Instead, as explained above, this case is akin to *Durbin*. The officer in this case remained within earshot when the defendant was in a position to communicate confidentially, albeit indirectly, with counsel. By doing so, the officer violated defendant's right to counsel under Article I, section 11, and, because the officer violated that right, the trial court erred in admitting defendant's breath test results.

Having concluded that the trial court erred in admitting defendant's breath test results, we turn to the question of whether the error was harmless. Or Const, Art VII (Amended), § 3 (a reviewing court must affirm a conviction despite a legal error if the error was harmless). An error is harmless if there is little likelihood that it affected

the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Defendant argues, and the state does not dispute, that the erroneous admission of the breath test results was not harmless. We agree. Defendant was charged with DUII and reckless driving, and the central issue in the case was whether defendant had been intoxicated. It is likely that the jury used the breath test results when deciding that issue. Although the state presented other evidence that defendant was intoxicated—specifically, witness testimony that defendant had exhibited physical symptoms of intoxication—the breath test results were qualitatively different and the state urged the jury to rely on them to find defendant guilty of both charged crimes. Given the charges, evidence, and arguments, we cannot say that it is unlikely that the erroneous admission of the breath test results affected the verdict.

Reversed and remanded.